IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## BERNARDO C. LANE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-24886     Joseph B. Dailey, Judge**

_____

**No. W2004-01882-CCA-R3-PC  - Filed November 22, 2005**

_____

The Defendant, Bernardo C. Lane, petitioned for post-conviction relief, alleging ineffective assistance of counsel.  After an evidentiary hearing, the trial court denied relief.  This direct appeal followed.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Scott Hall, Memphis, Tennessee, for the appellant, Bernardo Lane.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was convicted after a jury trial of one count of first degree murder,[1] one count of especially aggravated robbery, three counts of aggravated robbery, and one count of aggravated burglary.  These convictions arose out of a 1993 home invasion during which four persons were robbed.  The four victims were Billy Mosley, his wife Artis Mosley, their son, Kenneth Mosley, and their daughter, Danyale Davis.  During the home invasion, Kenneth Mosley was shot once in the back and killed.  The Defendant was tried with his two codefendants, Andre Hamilton and Redonna T. Hanna.  The Defendant's convictions were affirmed on direct appeal.  See State v. Redonna T.

[1]The Defendant was convicted of both felony murder and premeditated murder with respect to a single murder victim.  These two convictions were subsequently merged into a single count of first degree murder.

Hanna, No. 02C01-9806-CR-00165, 1999 WL 689414 (Tenn. Crim. App., Jackson, Sept. 7, 1999). The Defendant now seeks to have his convictions overturned and this matter remanded for a new trial on the basis that he received ineffective assistance of counsel at trial.

At his post-conviction hearing, the Defendant testified that, on the night of the crimes, he was with his sister, Shekeitha Lane. He informed his trial lawyer ("Counsel") of that fact. He also gave Counsel the names of two other witnesses, Reginald Hill and Chris Wright.[2] The Defendant stated that Counsel spoke with each of these persons and filed a notice of alibi on the basis of what one of them told her. Counsel did not, however, call this alibi witness at trial. Counsel also obtained affidavits from the Defendant's codefendants in which they stated that the Defendant was not present during the commission of the crimes. Counsel did not attempt to have these affidavits admitted at trial.

The Defendant also testified that Counsel did not attempt to suppress a pretrial identification of him made from a photo-spread. Nor did Counsel arrange to have Artis Mosley, one of the victims, listen to a series of voices in order to determine if she could identify the Defendant's. Counsel further failed to effectively cross-examine victim Danyale Davis with respect to her inconsistent statements. Counsel also failed to properly object to the introduction of a note that had not been previously provided during discovery. The Defendant also complained about Counsel's failure to move the trial court for a severance of his case from that of his codefendants. Counsel further failed to obtain a handwriting expert regarding the note that the prosecution maintained had been written by the Defendant.

The Defendant stated that Counsel should have called his arresting officer to testify because the officer could have described the Defendant's haircut at the time of his arrest. The Defendant stated that he was wearing his hair in "dreadlocks" at the time. However, the description of the suspect's haircut at the time of the crime was "a low haircut with a curl like top fade." The Defendant also stated that Counsel should have requested certain lesser-included offense instructions.

On cross-examination, the Defendant admitted to having signed a document stating, "[Counsel] did visit me in jail; we discussed the procedure for the handwriting example and was told that [Counsel] and a handwriting expert would come to take samples on Saturday, I told [Counsel] that I did not wish to give samples." The Defendant maintained, however, that his refusal to give a handwriting sample was made in conjunction with a different case, in which he was represented by another lawyer.

Shekeitha Lane testified that she is the Defendant's sister. She stated that, on December 27, 1993, the day of the crimes, she was at home. She remembered the date because she had planned to host a gathering that day in honor of the Defendant's planned entry into Job Corps. She spoke

---

[2]Later in his testimony, the Defendant stated that he gave Counsel the names of Chris Gray, Reginald Hill and Nicole Johnson as alibi witnesses.

with Counsel prior to the trial and informed her that the Defendant had been with her when the crimes were being committed. She thought she was going to testify but, during the Defendant's trial, Counsel told her that she "would be hurting his case because [she] was his sister, and [she] wouldn't do him any good as coming on the stand and speaking up for him." Accordingly, she did not testify on the Defendant's behalf.

Counsel testified that she was appointed to represent the Defendant in January 1995; the trial was held in February 1998. She met with the Defendant while he was incarcerated "several times." She discussed potential defense strategies with him. The Defendant did not mention an alibi until months after she began visiting him. She spoke with the Defendant's sister and filed a notice of alibi naming the Defendant's sister as the witness. She also spoke with Nicole Johnson and Christopher Gray. She was told about the Defendant's party in celebration of his entry into Job Corps, but she was unable to obtain the information she needed to verify his acceptance into the Corps. She was also unable to confirm who else was at the party. Later, the Defendant told her that he was at his sister's house that day because she had had surgery and needed his help looking after her children. Counsel stated that she "was getting . . . many conflicting statements from them about this alibi." She stated that she advised the Defendant that it was "going to look pretty bad if [his] own witnesses come in with conflicting statements."

Counsel testified that her file contained a note from Chris Gray stating that "all he knew is what he was being told, and he didn't know anything specific or anything definite about what was going on." She testified, "I thought it would damage [the Defendant], and I recommended to him not to put him on." She further testified that the Defendant agreed with her. They jointly decided to abandon the alibi defense. The Defendant also decided not to testify on his own behalf.

Counsel acknowledged that the Defendant had another case pending that also involved a handwritten note. In her case, however, she had obtained a court order for a handwriting expert. Nevertheless, the Defendant declined to submit a handwriting sample, and signed a document to that effect.

On cross-examination, Counsel recalled a piece of evidence being admitted at trial that had not been produced during discovery. She could not recall if it was the handwritten note. She did recall Billy Mosley testifying that the Defendant had left the note at the Mosley house for his son, Kenneth. She could not recall what, if any, objections she lodged to the introduction of the note. Post-conviction defense counsel thereupon entered the pertinent volume of the trial transcript into evidence.

Counsel testified that she tried to contact other people whose names had been provided to her by the Defendant, but she was unsuccessful in eliciting a response from any of them.

After hearing this proof, the trial court entered a written order denying the Defendant's claim for relief, finding that "each and every one of [the Defendant's] allegations is unfounded and wholly without merit . . . ." The Defendant now complains that the trial court erred in its decision.

## STANDARD OF REVIEW

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de

novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

## ANALYSIS

We will now address the Defendant's specific allegations of ineffective assistance of counsel as argued in his appellate brief.

The Defendant argues that Counsel was deficient in failing to present his alibi defense. However, Counsel explained that she discussed her concerns about this defense with the Defendant and they together determined not to pursue it. This was a strategic decision based on a sufficient investigation into the facts. The Defendant is not entitled to relief on this basis.

The Defendant argues that Counsel was deficient in failing to file a motion to suppress a photographic identification of him. The record before this Court on this appeal contains no proof of this photographic spread.[3] The Defendant has therefore failed to prove his allegations concerning this matter and is, accordingly, entitled to no relief on this basis.

The Defendant argues that Counsel was deficient in failing to introduce notarized statements of his codefendants. Because these statements were not admitted into evidence at the post-conviction hearing, they are not in the record before this Court on this appeal. The Defendant has therefore failed to prove these allegations and is, accordingly, not entitled to relief on this basis.

The Defendant argues that Counsel was deficient in failing to request "a voice line-up procedure to test the accuracy of witness Artis Mosley." The Defendant has failed to demonstrate how such a procedure would have benefitted him at trial. Accordingly, the Defendant is not entitled to relief on this basis.

The Defendant argues that Counsel was deficient in her cross-examinations of Artis Mosley and Danyale Davis. The Defendant has failed to demonstrate any prejudice resulting from this alleged deficiency. Accordingly, the Defendant is not entitled to relief on this basis.

The Defendant argues that Counsel "failed to raise an adequate objection to the introduction of a note." The Defendant contends that this note was not provided until the day of trial and its inadmissibility and/or a continuance should have been sought on that basis. However, the record indicates that the note was provided in sufficient time to permit Counsel to obtain an order for a handwriting expert. This allegation is, therefore, without merit.

_____

[3]The Defendant's amended petition for post-conviction relief purports to contain a copy of the photo-spread. However, documents that are merely attached to briefs are not cognizable as part of an appellate record. See State v. Matthews, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990).

The Defendant next contends that Counsel was deficient in failing to request a severance. The Defendant has failed to demonstrate that he was entitled to a severance; he has therefore failed to demonstrate any prejudice resulting from Counsel's inaction in this regard. Accordingly, the Defendant is not entitled to relief on this basis.

The Defendant next argues that the trial court erred in its instructions to the jury. Initially, we note that this is an issue that could have been raised on direct appeal. For the purposes of this proceeding, this issue is therefore waived. See Tenn. Code Ann. § 40-30-106(g). Moreover, the record before this Court on this appeal does not contain a copy of the allegedly inaccurate jury instructions. Accordingly, the Defendant has failed to prove his allegations in this regard.

The Defendant also argues that "[t]rial and appellate counsel was ineffective for not challenging the [Defendant's] conviction for aggravated robbery of Billy Mosley" on the basis that the State failed to prove that the assailants took anything from the "person" of Billy Mosley. Cf. id. § 39-13-402(a)(1) (defining aggravated robbery as the intentional or knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon or by display of any article used to lead the victim to reasonably believe it to be a deadly weapon). The single volume of the transcript of evidence from the Defendant's trial which is included in the record before us includes Mr. Mosley's testimony. He testified that several items of his were taken from his bedroom while he was in the adjoining bathroom. Thus, the Defendant is correct in his assertion that these items were not literally taken from Mr. Mosley's body. However, this Court has held that

> since 1989, if an offender, with the intent to deprive the owner, asserts control over property by means of the owner or possessor being removed from the presence of the property by force or fear, the offense of robbery is committed to the same degree that it is if the offender carries the property away from the victim's presence.

State v. Nix, 922 S.W.2d 894, 901 (Tenn. Crim. App. 1995). In this case, Mr. Mosley testified that, when the intruders entered his house, he started to leave his bedroom. As he was doing so, one of the intruders placed a gun in his face and told him to get back in his room. Mr. Mosley, who testified that he "thought they were going to kill us all," then retreated to the bathroom that adjoined the bedroom and closed the door. He later heard two persons in his bedroom. After they left the house, he discovered that several personal items were missing from his bedroom. This testimony was sufficient to establish the aggravated robbery of Billy Mosley. Accordingly, the Defendant's contention in this regard is without merit.

The Defendant next alleges that Counsel was deficient in failing to call his arresting officer to the stand. Because the Defendant has failed to establish what this officer would have stated, the Defendant has failed to establish any prejudice arising from this alleged deficiency. The Defendant is therefore entitled to no relief on this basis.

Finally, the Defendant complains that Counsel was ineffective in failing to file a motion to suppress a beeper seized in conjunction with the Defendant's arrest. The Defendant testified that he was arrested at his sister's house and that the police searched the house without a warrant. The record contains no proof as to whether the police had consent to perform the search. Because the Defendant has failed to establish that Counsel had a valid basis for making such a motion, he has failed to prove that she was deficient for not doing so. Accordingly, the Defendant is not entitled to relief on this basis.

The evidence does not preponderate against the findings of the trial court. The Defendant has not shown that he was prejudiced by any of the alleged deficiencies of Counsel. The Defendant thus failed to establish that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel. We affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE